UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| VS. | § | CRIMINAL ACTION NO. L-08-321 |
| | § | |
| VICENTE BERNAL | § | |

## OPINION AND ORDER

Now pending is a motion by Defendant Vicente Bernal to dismiss the indictment in the above-styled matter. [Dkt. No. 21]. For the reasons stated herein, Bernal's motion is **DENIED**.

## I.   FACTS AND PROCEDURE

Bernal is charged with being a felon in possession of a firearm. The one-count indictment, filed March 18, 2008, alleges that:

> On or about October 25, 2007, in the Southern District of Texas and within the jurisdiction of the Court, Defendant Vicente Bernal, having been convicted previously in the 406th Judicial District Court, Webb County, Texas, on January 12, 2004, for Stalking and Burglary of Habitation . . . , both crimes punishable by imprisonment for a term exceeding one year, did knowingly possess in and affecting commerce, a firearm, namely, a Hipoint .45 caliber pistol, Model .45 ACP, serial number X466850.
>
> In violation of Title 18, United States Code, Sections 922(g)(1) and 924(a)(2).

[Dkt. No. 1].

Bernal notes that discovery provided by the government shows that he was "encountered in a residence sitting next to a firearm and it was discovered that [Bernal] was previously convicted of a felony. The only federal nexus is the fact that the firearm was not manufactured in the State of Texas." [Dkt. No. 21 at 1].

**II.    DISCUSSION**

The statute under which Bernal was indicted reads in relevant part as follows:

It shall be unlawful for any person who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year to . . . possess in or affecting commerce, any firearm or ammunition . . . .

18 U.S.C. § 922(g)(1).  Moreover, 18 U.S.C. § 924(a)(2) provides: "Whoever knowingly violates subsection (a)(6), (d), (g), (h), (i), (j), or (*o*) of section 922 shall be fined as provided in this title, imprisoned not more than 10 years, or both."

The substance of Bernal's motion rests upon the Second Amendment to the United States Constitution.  The Amendment reads in full:  "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed."  U.S. Const. amend. II.  Bernal first argues that the Second Amendment "establishes a fundamental individual right to bear arms."  [Dkt. No. 21 at 2].  He next claims that "any statute purporting to infringe upon that right is subject to strict scrutiny."  [*Id.* at 4].  He claims that 18 U.S.C. § 922(g)(1) fails this test, because it is not narrowly tailored, and moreover, Congress does not have the power under the Commerce Clause to regulate purely intrastate possession of a firearm.  [*Id.* at 5, 9].

Bernal also claims that § 922(g)(1) fails equal protection.  He alleges that the Supreme Court's holding in *Lewis v. United States*, 445 U.S. 55 (1980), which upheld a predecessor statute over an equal protection challenge, did not evaluate the right to bear arms as a fundamental individual right, and because it preceded the modern trend towards recognition of such an individual right, the Court should not follow it.  [Dkt. No. 21 at 10].  The fundamental ill of § 922(g)(1) as concerns equal protection, claims Bernal, is that the statute incorporates disparate state definitions of a qualifying conviction.  [*Id.*].

This inequality extends to the mechanism by which one's right to bear arms is restored: because he was convicted of a felony in Texas, and not, for instance, Idaho, Bernal claims that his fundamental right to bear arms is subject to "grossly disparate treatment." [*Id.* at 13].

### A.     The Second Amendment: A Fundamental Individual Right?

The keystone of Bernal's argument is that § 922(g)(1) interferes with a fundamental individual right to bear arms.  Primarily, Bernal relies on *United States v. Emerson*, 270 F.3d 203, *pet. for reh'g en banc denied*, 281 F.3d 1281 (5th Cir. 2001), *cert. denied*, 122 S. Ct. 2362 (2002).  In *Emerson*, the defendant was charged with 18 U.S.C. § 922(g)(8), which prohibits a person who is subject to certain state-court restraining orders from possessing a firearm.  *See* 270 F.3d at 212-13.  The district court dismissed the indictment on the grounds that it violated the Second or Fifth Amendment, but not the Tenth Amendment or Commerce Clause.  *Id.* at 212.  On appeal, the Fifth Circuit conducted an exhaustive analysis, and indeed concluded that the Second Amendment guarantees the right of individual Americans to "privately possess and bear their own firearms," and does not limit such right to the States or to active state militiamen.  270 F.3d at 218-60.  However, the Fifth Circuit also explicitly noted that this right is subject to limits:

> Although, as we have held, the Second Amendment *does* protect individual rights, that does not mean that those rights may never be made subject to any limited, narrowly tailored specific exception or restrictions for particular cases that are reasonable and not inconsistent with the right of Americans generally to individually keep and bear their private arms as historically understood in this country. . . . As we have previously noted, it is clear that felons, infants and those of unsound mind may be prohibited from possessing forearms.

*Id.* at 261 (emphasis in original).[1]  At this point, the opinion references an earlier footnote, which itself discusses and recites a salient passage from *Lewis v. United States*, 445 U.S. 55, 100 S. Ct. 915, 921 n.8 (1980).  That passage discusses the predecessor felon-in-possession statute (former 18 U.S.C. § 1202(a)(1)).  The passage reads:

> These legislative restrictions on the use of firearms are neither based upon constitutionally suspect criteria, nor do they trench upon any constitutionally protected liberties. *See United States v. Miller*, 307 U.S. 174, 59 S. Ct. 816, 818, 83 L. Ed. 1206 (1939) (the Second Amendment guarantees no right to keep and bear a firearm that does not have "some reasonable relationship to the preservation or efficiency of a well regulated militia").

445 U.S. at 65 n.8.

After reaching the Second Amendment question, the Fifth Circuit in *Emerson* concluded that the defendant was afforded a hearing, which included notice and an opportunity to participate, before being deprived of his Second Amendment right.  270 F.3d at 261-62.  The Fifth Circuit therefore ultimately held that the indictment was not unconstitutional on Fifth Amendment due process grounds.  *See id.* at 262-64 (noting that the state court "followed state law in issuing the order," and the proceeding met "general minimum standards for the issuance of contested injunctive orders after notice and hearing").

### B.   Application of the Second Amendment to the Instant Case

It would appear, then, that precedent both giveth and taketh away.  Bernal is correct in pointing to *Emerson's* exegesis of the Second Amendment as establishing an

---

[1] Recently, the District of Columbia Circuit likewise found that the Second Amendment guarantees an individual right to keep and bear arms. *Parker v. District of Columbia*, 478 F.3d 370, 395 (D.C. Cir. 2007). The Supreme Court granted certiorari on whether the District's gun statute violates the Second Amendment, and will necessarily confront the Second Amendment question. *Cert. granted sub nom. District of Columbia v. Heller*, 128 S. Ct. 645 (Nov. 20, 2007). Argument was heard on March 18, 2008. The Supreme Court has not yet released an opinion; therefore, the Fifth Circuit's opinion in *Emerson* remains precedent.

individual right to bear arms.  However, the reasoning of *Emerson* relies directly upon *Lewis* for its coherence.  To imply that *no* federal law may impinge on an individual's right to bear arms—regardless of that person's age, mental ability, or criminal history, or regardless of the type of weapon—is inconsistent with the meaning of the Amendment as discussed by the Fifth Circuit and Supreme Court.  *Cf. Miller*, 307 U.S. at 178 (individual may not possess sawed-off, double barrel, 12-gague shotgun, as this bears no "reasonable relationship to the preservation or efficiency of a well regulated militia").  Moreover, Bernal's argument that the United States may not regulate his possession of a gun is simply untenable.  *Cf. Terminello v. Chicago*, 337 U.S. 1, 37 (1949) (Jackson, J., dissenting) (reasoning that the Bill of Rights should not be read in so limitless a manner as to make it a "suicide pact").  One might well conclude that the United States Supreme Court has already considered and rejected Bernal's thesis that § 922(g)(1) impermissibly treads upon his fundamental right to bear arms.  *See Lewis*, 445 U.S. at 65 n.8.  Not unmindful that he is fighting uphill, Bernal nevertheless puts forward three arguments, which will be considered in turn.

### 1. Substantive Due Process and Strict Scrutiny

Bernal argues that the Fifth Circuit in *Emerson* applied a strict scrutiny test, which § 922(g)(8) withstood because it is "narrowly tailored."  [Dkt. No. 21 at 2-3 (citing 270 F.3d at 261)].  However, the Fifth Circuit was actually testing whether the state-court injunction underlying the indictment in *Emerson* met due process requirements, and thus did not consider the constitutionality of § 922.  Bernal nevertheless argues, without citing authority, that the individual right to bear arms is "fundamental," and therefore any law restricting it must withstand strict scrutiny by being narrowly tailored to a compelling

state interest. [*Id.* at 4-5]. This is best characterized as a substantive due process argument. *See Reno v. Flores*, 507 U.S. 292, 299-300 (1993).

The Supreme Court instructs that "substantive due process analysis must begin with a careful description of the asserted right." *Reno*, 507 U.S. at 302. While Bernal simply characterizes § 922(g)(1) as an infringement of his "right to bear arms," [Dkt. No. 21 at 4], it is apparent that he is actually challenging the United States' power to curtail a *convicted felon's* right to bear arms. The analysis begins and ends here. As the Supreme Court clearly stated in *Lewis*: "These legislative restrictions on the use of firearms are neither based upon constitutionally suspect criteria, nor do they trench upon any constitutionally protected liberties." 445 U.S. at 65 n.8. The Fifth Circuit, despite holding that the Second Amendment protects an individual right, agreed in dicta. *See Emerson*, 270 F.3d at 226 n.21 (citing sources indicating that, in eighteenth century Colonial and English societies, felons enjoyed no right to possess guns); *id.* at 261; *see also United States v. Price*, 328 F.3d 958, 961-62 (7th Cir. 2003) (holding that § 922(g) is constitutional on Second Amendment grounds). Therefore, Bernal, a convicted felon, did not have a fundamental right to possess a Hipoint .45 caliber pistol on October 25, 2007. Because "narrow tailoring is required only when fundamental rights are involved," *Reno*, 507 U.S. at 305, this argument fails.

### 2. The Commerce Clause

Bernal next challenges § 922(g)(1) on that grounds that Congress was without power to enact the statute, because Bernal's conduct did not affect interstate commerce. [Dkt. No. 21 at 5]; *see* U.S. Const. Art. I, § 8, cl. 3 (granting Congress the power to "regulate commerce . . . among the several States"). Bernal attempts to connect this

argument with his substantive due process claim. [Dkt. No. 21 at 5 ("In particular, [§ 922(g)(1)] embodies no tailored or compelling relationship to the regulation of interstate commerce. The statute accordingly cannot survive strict scrutiny . . . .")].

The Commerce Clause argument takes a cue from Justice Thomas's concurring opinion in *Printz v. United States*, 521 U.S. 898, 938 (1996) (Thomas, J., concurring) (reasoning that if "the Second Amendment is read to confer a *personal* right to 'keep and bear arms,' a colorable argument exists that the federal government's regulatory scheme, at least as it pertains to the purely intrastate sale or possession of firearms, runs afoul of that Amendment's protections") (emphasis in original). This argument is also in keeping with the Supreme Court's recent federalism jurisprudence, which posits that there are ascertainable limits to Congress's power to regulate purely intrastate activities via the Commerce Clause. *See United States v. Lopez*, 514 U.S. 549 (1995); *United States v. Morrison*, 529 U.S. 598 (2000); *cf.* ERWIN CHEMERINSKY, FEDERAL JURISDICTION 409 (5th ed. 2007) (noting that the Supreme Court in the last decade has on occasion "invalidated federal statutes as exceeding the scope of Congress's commerce clause authority," reflecting a willingness to "limit federal power and protect state power").

Here, Bernal claims that the only act of an interstate character is the fact that the firearm found in his proximity was manufactured in another state. [Dkt. No. 21 at 8]. However, this is precisely the connection to "commerce" which was present in *Lewis*. *See* 445 U.S. at 57 (noting that the defendant "stipulated that the weapon in question had been shipped in interstate commerce"). The Court noted that this was an "expansive legislative approach" under the Commerce Clause, yet did not invalidate the statute. *See id.* at 61. The Fifth Circuit has reaffirmed that such a nexus is sufficient to affect

commerce.  *United States v. Daugherty*, 264 F.3d 513, 518 (5th Cir. 2001), *cert. denied*, 122 S. Ct. 1113 (2002).  Here, Bernal acknowledges that the weapon was manufactured in a state other than Texas.  [Dkt. No. 21 at 1].  However, Bernal doggedly argues that if one accepts the premise that the Second Amendment grants individuals "a key constitutional right originally and traditionally left almost exclusively to state regulation, then the tenuous, commerce-based jurisdiction now endangered by the Supreme Court's recent Commerce Clause jurisprudence must give way."  [Dkt. No. 21 at 8-9].  Bernal makes an admirable effort to reconcile the Second Amendment with the Supreme Court's federalism jurisprudence since *Lewis* was decided in 1980.  Nevertheless, this Court may not ignore holdings of the Supreme Court and the Fifth Circuit, even if one gives Bernal the benefit of the doubt and acknowledges that the statute's "commerce" foundation has been chipped away somewhat.

Bernal cannot point to a clear indication that *Morrison*, *Lopez*, or even Justice Thomas's ruminations in *Printz* went so far as to overrule the clear holding of *Lewis*.  *See Printz*, 521 U.S. at 938-39 (Thomas, J., concurring) ("As the parties did not raise this argument, however, we need not consider it here."); *see also United States v. Cardoza*, 129 F.3d 6, 10-11 (1st Cir. 1997) (reasoning that facial challenges to § 922(g) under the Commerce Clause are "hopeless").  Moreover, Bernal's insinuation that the federal government has traditionally taken a hands-off approach in the regulation of weapons— while perhaps consistent with the intent of the drafters of the Bill of Rights, *see Emerson*, 270 F.3d at 244-51—is belied by precedent.  In *Miller*, the Supreme Court showed no compunction in upholding the United States' legislative efforts to regulate the interstate possession of certain classes of weapons.  In *Lewis*, the Court was equally willing to

uphold the United States' efforts to regulate the possession of weapons by convicted felons.

Finally, Bernal argues that because the right to bear arms is "fundamental," the regulation of his intrastate possession of a firearm is especially suspect. As noted, a convicted felon does not have a fundamental right to keep and bear a gun. Moreover, Bernal's argument misses the point. Either Congress does or does not have the power under the Commerce Clause to regulate this class of conduct, regardless of how "fundamental" such right may be. Ultimately, because precedent establishes that Congress is within its power to regulate a convicted felon's possession of a weapon manufactured in another state, the Commerce Clause challenge to § 922(g)(1) fails.

### 3. Equal Protection

Finally, Bernal argues that § 922(g)(1) violates his Fifth Amendment right to equal protection. Again, this argument is foreclosed by Supreme Court precedent. *See Lewis*, 445 U.S. at 65-66 ("The firearm regulatory scheme at issue here is consonant with the concept of equal protection embodied in the Due Process Clause of the Fifth Amendment if there is some rational basis for the distinctions made or they have some relevance to the purpose for which the classification is made. . . . [The statute] clearly meets this test.") (internal quotations and alterations omitted); *id.* at 65 n.8 ("These legislative restrictions on the use of firearms are neither based upon constitutionally suspect criteria, nor do they trench upon any constitutionally protected liberties . . . ."). The Court also necessarily considered, and rejected, the contention that the disparate nature of the States' firearm rehabilitation schemes violates equal protection. *Id.* at 67 ("Again, it is important to note that a convicted felon may challenge the validity of a

Case 5:08-cr-00321   Document 24   Filed in TXSD on 05/15/08   Page 10 of 10

prior conviction, or otherwise remove his disability, before obtaining a firearm."). Therefore, this argument fails.

### III.    CONCLUSION

For the reasons stated above, Bernal will not suffer an unconstitutional infringement of his Second Amendment rights if he is prosecuted under 18 U.S.C. § 922(g)(1). Moreover, the statute is consistent with Congress's constitutional power to regulate interstate commerce. Finally, the statute does not violate equal protection. Bernal's motion to dismiss the indictment is **DENIED**.

IT IS SO ORDERED.

SIGNED this 15th day of May, 2008.

_____
Micaela Alvarez
United States District Judge